IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| McGOWAN & COMPANY, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1716 |
| | § | |
| ROGER F. BOGAN, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This contract and tort dispute is before the Court on the Second Motion for Summary Judgment ("Motion") [Doc. # 128] filed by Defendants Roger F. Bogan ("Bogan"), Swain & Baldwin Insurance ("SBI"), Universal Managers, Inc. ("UMI"), and Ray B. Baldwin ("Baldwin") (collectively, "Defendants"). Plaintiff McGowan & Company, Inc. ("McGowan" or "Plaintiff") filed a Response [Doc. # 131],[1] to which Defendants filed a Reply [Doc. # 139]. Having reviewed the full record and the applicable legal authorities, the Court **denies in part** and **grants in part** Defendants' Motion.

The Court concludes that all Defendants are entitled to summary judgment on Plaintiff's claim for tortious interference with business relationships. The Court

---

[1]Plaintiff states that pages 19-20 of the Response contain confidential financial information, and thus Plaintiff filed the brief and attachments under seal pursuant to the parties' Stipulated Protective Order [Doc. # 67]. Plaintiff McGowan & Company Inc.'s Response to Order to Show Cause Why Filing Was Made Under Seal [Doc. # 136]. Defendants have not objected to Plaintiff filing these documents under seal. The Court concludes that the documents shall remain under seal.

further concludes that Defendants SBI, Baldwin, and UMI are entitled to summary judgment on Plaintiff's claim for tortious interference with prospective business relationships.  As a result, SBI, Baldwin, and UMI are dismissed from this case. Finally, the Court concludes that Plaintiff has raised genuine fact disputes with regard to whether it suffered some damage as a result of Bogan's alleged misconduct. Summary judgment, therefore, is denied for Bogan on Plaintiff's remaining claims for breach of contract, breach of fiduciary duty, and tortious interference with prospective business relationships.

## I.    **BACKGROUND**

On March 17, 2015, the Court issued a Memorandum and Order ("M&O") [Doc. # 124] granting in part and denying in part the parties' cross-motions for summary judgment.  This opinion stated the facts and procedural history of this case, and the Court does not repeat them here.  The Court made numerous rulings. Specifically, the Court dismissed with prejudice Plaintiff's claims against Bogan for misappropriation of trade secrets and unjust enrichment; held that Ohio law applied to Plaintiff's breach of contract claim against Bogan; held that Texas law applied to Plaintiff's remaining tort claims for breach of fiduciary duty against Bogan, tortious interference with business relationships against all Defendants, and tortious interference with prospective business relationships against all Defendants; and dismissed with prejudice Defendants' counterclaim for attorneys' fees under Rule 11 of the Federal Rules of Civil Procedure.  With regard to Plaintiff's claim against Bogan for breach of the Trade Secrets & Special Terms Agreement (the "Agreement"), the Court rejected Defendants' argument that the Agreement was unconscionable; held that the Agreement was generally enforceable, but genuine fact disputes existed about whether any of the information at issue in this case constitutes

trade secrets or confidential or proprietary information, and thus held it was unable to determine whether or not Paragraph 6 of the Agreement, the "Non-Compete" provision, should be modified or severed; held that genuine disputes of material fact precluded summary judgment for either party on the issue of whether Bogan breached the Agreement; denied without prejudice Defendants' motion for summary judgment on the issue of damages, and ordered Plaintiff to file a more definite statement clarifying its damages theories; and dismissed Plaintiff's claim for attorneys' fees pursuant to Texas Civil Practices and Remedies Code § 38.001, but held that, pursuant to the terms of the Agreement, Plaintiff could recover fair, just, and reasonable attorneys' fees if it prevailed on its breach of contract claim.  The Court, on Plaintiff's breach of fiduciary duty claim against Bogan, held that there were genuine and material fact disputes on the elements of duty, breach, and causation, precluding summary judgment for either party; denied without prejudice Defendants' motion for summary judgment on the issue of damages on this claim; and ordered Plaintiff to file a more definite statement clarifying its damages theories.  On Plaintiff's tortious interference claims against all Defendants, the Court denied all motions for summary judgment without prejudice and ordered Plaintiff to file a more definite statement clarifying both its remaining liability theories against each Defendant and its damages theories on those claims.

On March 27, 2015, Plaintiff filed the required More Definite Statement [Doc. # 125] essentially re-pleading the remaining claims in this case.  Defendants object to Plaintiff's More Definite Statement on the grounds that it impermissibly exceeds the scope of the Court's M&O.  Motion, at 4.  On April 20, 2015, Plaintiff filed a Motion for Leave to File Plaintiff McGowan & Company, Inc.'s Amended More Definite Statement ("Motion for Leave") [Doc. # 130], seeking to correct typographical errors

in the More Definite Statement and attaching a copy of the proposed Amended More Definite Statement ("Amended Statement") [Doc. # 130-1].   Defendants filed a Response [Doc. # 138] to Plaintiff's Motion for Leave, to which Plaintiff filed a Reply [Doc. # 140], and Defendants filed a Sur-Reply [Doc. # 141].   The Court reiterates that the operative pleading in this case is Plaintiff's First Amended Complaint ("Amended Complaint") [Doc. # 52-1].   Neither Plaintiff's More Definite Statement nor Plaintiff's Amended Statement constitute an amendment to the pleadings. Defendants' objections to Plaintiff's More Definite Statements are **sustained** in part. The Court disregards the original More Definite Statement as it has been superseded. The Court will consider the Amended Statement only to the extent it complies with the directives in the Court's M&O.   Plaintiff's Motion for Leave thus is **granted** in part.

On April 10, 2015, Defendants filed the instant motion for summary judgment seeking summary judgment on Plaintiff's tortious interference claims.[2]   Defendants further argue that Plaintiff has failed to raise a genuine dispute of material fact on the damages element of all its remaining claims against Bogan.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.

---

[2]The Court ordered that any party could file by April 10, 2015, a new motion for summary judgment on any damages or liability theories in Plaintiff's more definite statement. M&O, at 52.

1994) (*en banc*).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).  "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most

favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the

record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *accord Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

## III.   ANALYSIS

### A.   Tortious Interference with Business Relationships

Defendants move for summary judgment on the "Tortious Interference with Business Relationships" claim asserted in Count IV of Plaintiff's Amended Complaint.   There, Plaintiff sues all Defendants for "tortiously interfering with McGowan's contracts and business relationships with its clients."   *See* Amended Complaint, ¶ 54.   Plaintiff fails to explain any theory for SBI or Bogan's liability for tortious interference with McGowan's business relationships, and thus Plaintiff is deemed to have abandoned this claim against SBI and Bogan.   *See* M&O, at 52.

The Court next considers Plaintiff's claim against Baldwin and UMI for tortious interference with "business relationships."   Plaintiff alleges generally that "McGowan has established business relationships and insurance contracts with a large number of clients," Amended Complaint, ¶ 55, that "Defendants have knowledge of these business relationships and contracts because of Bogan's former affiliation with McGowan," *id.*, ¶ 56, that "Defendants have intentionally and improperly solicited these and other clients to terminate their relationships with McGowan and instead establish a relationship with Swain & Baldwin," *id.*, ¶ 57, and that "Bogan began interfering with McGowan's client business while still employed by McGowan and continue to do so on behalf of Swain & Baldwin," *id.*, ¶ 58.   Plaintiff, however, fails to identify any existing client and/or customer relationships with which Defendants Baldwin, SBI, UMI, or Bogan allegedly interfered.   Instead, Plaintiff attempts to plead a new cause of action against Defendants Baldwin and UMI for tortious interference

with "contract," alleging that Baldwin and UMI tortiously interfered with McGowan's Agreement with its employee, Bogan.  Amended Statement, ¶¶ 56-103.[3]  The deadline for amendments to pleadings was October 31, 2012.  Docket Control Order [Doc. # 47].  Plaintiff has not sought, and the Court does not grant, leave to amend the pleadings to assert a new cause of action more than two and a half years after this deadline.

To survive summary judgment, Plaintiff's claim for tortious interference with business relationships must identify existing client and/or customer relationships with which a Defendant interfered.  Plaintiff has failed to do so, and thus fails to raise a genuine dispute of material fact on an essential element of this claim.  Defendants Baldwin and UMI, accordingly, are entitled to summary judgment on Plaintiff's claim for tortious interference with business relationships.  Defendants Bogan and SBI also are entitled to summary judgment for this reason on Plaintiff's claim against them for tortious interference with business relationships.

### B.   Tortious Interference with Prospective Business Relationships

Defendants also seek summary judgment on Plaintiff's claim for tortious interference with prospective business relationships.  Under Texas law, to prevail on this claim, Plaintiff "must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from

---

[3]Plaintiff's Amended Statement recharacterizes Plaintiff's previously-asserted claim for tortious interference with "business relationships" as a claim against Baldwin and UMI for tortious interference with an existing "contract."  In its prior rulings, the Court noted that Plaintiff's Amended Complaint contains claims against all Defendants for tortious interference with existing and prospective business relationships, not tortious interference with an existing contract.  M&O, at 46 n.50.

occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  For the third element, the Texas Supreme Court has recognized that "the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).  Examples of when a plaintiff may recover include situations in which a defendant asserts a right to remain on a property during the eviction process, giving rise to a cognizable claim for trespass, *Coinmach*, 417 S.W.3d at 923; a defendant makes fraudulent statements about the plaintiff to a third person with the intent to deceive, even if the third person was not actually defrauded, *Sturges*, 52 S.W.3d at 726; a defendant threatens a person with physical harm if he does business with the plaintiff and the plaintiff could prove that the defendant's conduct toward the prospective customer would constitute assault, *id.*; and a defendant arranges an illegal boycott of plaintiff's business, *id.*

Plaintiff's Amended Statement clarifies that Plaintiff, in its claim for tortious interference with prospective business relationships (Count V of the Amended Complaint), asserts that Bogan, SBI, UMI, and Baldwin allegedly interfered with two prospective business relations: (1) an insurance quote request from Insurisk of Louisiana regarding the Holy Family Apartments (the "Insurisk Quote"); and (2) a quote for "Centex" that Bogan allegedly initially made on behalf of McGowan but, upon expiration of that quote, diverted to UMI without informing McGowan (the "Centex Quote").  *See* Amended Statement, ¶¶ 104-177.  For the reasons explained below, the Court grants summary judgment in favor of Defendants SBI, Baldwin, and

UMI on both the Insurisk and Centex Quotes, awards Bogan summary judgment on the Centex Quote, and denies the Motion as to Bogan on the Insurisk Quote.

### 1.    Bogan

Plaintiff has raised a genuine material fact issue on its claim for tortious interference with prospective business relationships against Bogan, but only with regard to the Insurisk Quote.  Plaintiff contends that Bogan diverted both the Insurisk and Centex Quotes away from McGowan to Baldwin and/or UMI.    Amended Statement, ¶¶ 104-120; *see also* Amended Complaint, ¶ 68 ("Upon information and belief, Bogan began interfering with prospective business relationships of McGowan on behalf of Swain & Baldwin while still employed by McGowan.").  Plaintiff argues that this conduct was independently tortious because diverting these quotes to a McGowan competitor without McGowan's knowledge or consent amounts to Bogan misappropriating McGowan's trade secrets.  The Court has already noted that there is a genuine fact dispute between the parties that precludes summary judgment on the issue of whether McGowan could have written the Insurisk Quote.  M&O, at 38, n.44. Defendants now contend similarly that McGowan could not have written any business from the expired Centex Quote, and that, in diverting the Centex Quote, Bogan did not consciously desire to prevent McGowan from entering a business.  Motion, at 17. These fact-based arguments raise genuine material fact disputes on the first four elements of Plaintiff's claim for tortious interference with prospective business relationships, namely, whether (1) there was a reasonable probability that McGowan could have entered into a business relationship from the Insurisk or Centex Quotes; (2) Bogan diverted the Insurisk and Centex Quotes away from McGowan with either a conscious desire to prevent these relationships from occurring or knew that interference was certain or substantially certain to occur as a result of his conduct;

(3) Bogan's conduct could be considered an actionable tort claim of misappropriation of trade secrets; and (3) Bogan's interference proximately caused McGowan injury.

The Court focuses here on whether Plaintiff has raised a genuine fact dispute that Bogan's allegedly wrongful conduct caused actual damage.

### a.    Damages

Plaintiff clarifies that it seeks "lost profits" or, in the alternative, "the amount Bogan was unjustly enriched." Amended Statement, ¶¶ 117-118. Plaintiff also seeks "exemplary damages in the form of punitive damages as a result of willful and wanton acts of Bogan." *Id.*, ¶ 119; Amended Complaint, ¶ 72. For summary judgment purposes, the Court concludes that Plaintiff has raised a genuine fact dispute with regard to a small amount of lost profits McGowan allegedly suffered due to Bogan's conduct in redirecting the Insurisk Quote. Plaintiff has not met this burden regarding the Centex Quote.

Texas law applies to Plaintiff's claim of "tortious interference with prospective business relationships." Lost profits are available as damages under Texas law for tortious interference with prospective business relationships. *See* M&O, at 48, n.51 (citing *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 629 (Tex. App.–Houston [1st Dist.] 2010, pet. denied)). The Texas Supreme Court repeatedly has made clear the high burden of proof:

> The rule concerning adequate evidence of lost profit damages is well established: "Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting

documentation may affect the weight of the evidence, it is not necessary
to produce in court the documents supporting the opinions or estimates."

*ERI Consulting Eng'rs, Inc. v. Swinea*, 318 S.W.3d 867, 876 (Tex. 2010) (quoting
*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)); *accord Glattly*,
332 S.W.3d at 630-31.   "The plaintiff bears the burden of providing evidence
supporting a single complete calculation of lost profits." *ERI Consulting*, 318 S.W.3d
at 878.

For the Centex Quote, Plaintiff has not directed the Court to any admissible
evidence in the record on the amount of profits, if any, Plaintiff allegedly lost due to
Bogan's misconduct.   Plaintiff simply asserts, without citation to evidence, that
"McGowan could have written the Centex piece of business [after the quote expired].
McGowan had already previously provided a quote with respect to the piece of
business."  Amended Statement, ¶ 113.  Plaintiff appears to rely on Paragraph 22 of
the January 15, 2015 declaration of its CEO, Christopher Longo [Doc. # 125-3], in
which he states: "If a quote is 'expired,' it can oftentimes be easily reactivated."
Longo's vague statement is unsupported by evidence in the record and is insufficient
to support a jury verdict.   Plaintiff has not raised a genuine fact issue regarding
whether McGowan suffered reasonably certain lost profits as a result of Bogan's
misconduct relating to the Centex Quote.

In contrast, Plaintiff has met its burden to raise an issue that it suffered a tiny
amount of lost profits damages due to Bogan's alleged diversion of the Insurisk
Quote.  Plaintiff points to Defendants' statement that "Bogan earned a brokerage fee
from Holy Family Apartments [the Insurisk Quote]" and that "[t]he total net amount
of revenue to Universal Managers was $450 based on 5% net retained on a $9,000

premium."[4]   There are genuine and material fact disputes precluding summary judgment for Bogan on the damages element of the claim of tortious interference with prospective business relations relating to Bogan's alleged diversion of the Insurisk Quote.

The Court declines to decide whether Plaintiff may recover, alternatively, unjust enrichment damages on this claim against Bogan.[5]   The Court also does not reach the

---

[4]Response to Plaintiff's First Set of Interrogatories and Objections to Defendants, No. 17 [Doc. # 111-9], at ECF page 14.  *See* M&O, at 38-39 & n.44.

[5]It is noted, however, that there is a substantial issue whether unjust enrichment damages are available under the circumstances and claim presented here.  Plaintiff relies on cases applying Texas law which address recovery of unjust enrichment damages for a claim for tortious interference with *existing contractual relationships*, not a claim of tortious interference with prospective business relationships, which is what Plaintiff asserts.  *See Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489, 494 (2008 5th Cir.) (noting that plaintiff "only complains that [defendant] tortiously interfered with the Employment Agreements" and concluding that "[i]n the event the jury cannot readily ascertain the amount of lost profit [plaintiff] sustained from the loss of the Show, Amigo can seek to recover the amount [defendant] was unjustly enriched by its actions"); *Sandare Chem. Co., Inc. v. WAKO Int'l, Inc.*, 820 S.W.2d 21, 23 (Tex. App.–Fort Worth 1991, no writ) ("An unjust enrichment measure of damages is appropriate for wil[l]ful interference with contractual relations, at least where the plaintiff's lost profits are not readily ascertainable."); *Gonzalez v. Hewitt Holdings, L.L.C.*, No. 09-00-152 CV, 2000 WL 1643871, at *3 (Tex. App.–Beaumont Nov. 2, 2000, no pet.) ("However, because interference with contract is a tort, a plaintiff is not limited to contract damages.  Unjust enrichment and lost profits are also appropriate measures of damage."  (internal citation omitted)); *In re Performance Nutrition, Inc.*, 239 N.R. 93, 114 (Bankr. N.D. Tex. 1999) (finding that defendant " tortiously interfered with the employment contract" and noting that the "usual measure of damages for tortious interference is the same as for breach of contract" but "[o]ther measures of damages available for tortious interference include unjust enrichment and lost profits"); *Ott v. Sonic Land Corp.*, No. 09-94-209 CV, 1996 WL 185347, at *6 (Tex. App.–Beaumont Apr. 18, 1996, no pet.) (discussing the elements for tortious interference with a contract and noting that the "measure of damages for tortious interference is generally the same as for breach of contract.  However, because interference is a tort, a plaintiff is not limited to contract damages.  Unjust enrichment, and lost profits, are also
(continued...)

parties' dispute regarding whether Plaintiff is entitled to recover exemplary damages against Bogan.[6]

### b.      Bogan's "Justification Defense"

Defendants now argue that Bogan cannot be held liable for tortious interference with prospective business relationships because Bogan had a "good faith belief these accounts [the Insurance and Centex Quotes] were no longer viable accounts for McGowan."  Motion, at 18.  On April 10, 2015, Defendants filed a Supplemental Answer [Doc. # 129] adding for the first time in this case "the affirmative defense of justification for tortious interference with existing or prospective business relationships based on either (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." Supplemental Answer, ¶ 6.[7]

---

[5](...continued)
appropriate measures of damage." (internal citations omitted)).  Moreover, Plaintiff does offer any explanation for how unjust enrichment damages should be calculated.

[6]Plaintiff concedes correctly that it may only pursue exemplary damages if it is able to prove actual damages first.  Response, at 23.  *See Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1334 (5th Cir. 1993) ("[U]nder Texas law, the plaintiff is foreclosed from recovering punitive damages unless the factfinder has awarded actual damages.").  The Texas Supreme Court has recognized that "[e]xemplary damages are authorized under the Texas Civil Practice and Remedy Code when the claimant proves by clear and convincing evidence that the harm results from fraud, malice or gross negligence."  *Dillard Dep't Stores, Inc. v. Silva* 148 S.W.3d 370, 372-73 (Tex. 2004) (per curiam) (citing TEX. CIV. PRAC. & REM. CODE § 41.003(a)).  The Court rejects Defendants' argument that Plaintiff cannot seek exemplary damages because Plaintiff has only stated that Bogan's conduct was "willful and wanton," and this is "no longer the standard in Texas."  Motion, at 25.  *See* Amended Complaint, ¶ 72 (alleging that Plaintiff seeks "punitive damages as a result of willful and wanton acts of the Defendants").  Plaintiff has put Defendants on notice and will be allowed to attempt to prove that Defendants' conduct constitutes fraud, malice, or gross negligence.

[7]Plaintiff filed a Motion to Strike Defendants' Supplemental Answer ("Motion to (continued...)

Defendants argue that Federal Rule of Civil Procedure 15(d) provides grounds for granting leave to amend their answer in response to "additional facts and newly-articulated claims asserted in McGowan's More Definite Statement, especially the new allegation of an unjustified tortious interference with Bogan's own agreement with McGowan."  Response to Motion to Strike, at 4.  This argument is unavailing.  Rule 15(d) states "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  No such event exists in this case.  Indeed, the need for the new defense is mitigated by the Court's ruling sustaining Defendants' objections and disregarding Plaintiff's statements constituting new claims or theories beyond those in the Amended Complaint.

Defendants further contend that they timely requested to amend their answer because the Court recently held that Texas law applies to Plaintiff's tort claims.  This argument also is unavailing.  According to Defendants, under Ohio law, "justification" is an element of a tortious interference claim, whereas under Texas law, it is an affirmative defense.  Response to Motion to Strike, at 5.  In fact, Defendants were on notice from the time Plaintiff filed its Amended Complaint on October 30, 2012,

---

[7](...continued)
Strike") [Doc. # 142], to which Defendants filed a Response ("Response to Motion to Strike") [Doc. # 143], and Plaintiff filed a Reply [Doc. # 144].  Defendants did not file a motion seeking leave of the Court before filing their Supplemental Answer, as required by Rules 15 and 16 of the Federal Rules of Civil Procedure.  Instead, Defendants belatedly requested leave to file their Supplemental Answer in their Reply to the Second Motion for Summary Judgment [Doc. # 139], at 12, n.6, and Response to Plaintiff's Motion to Strike [Doc. # 143], at 3-4.

asserting that Texas law may apply to Plaintiff's claims.[8]  Indeed, Defendants have argued for years that Texas law applies to all of Plaintiff's claims.[9]  Defendants had ample opportunity to assert a formal justification defense under Texas law and failed to do so.  Plaintiff's Motion to Strike, therefore, is **granted**, and Defendants' Supplemental Answer is **stricken** from the record.[10]

For the reasons explained above, summary judgment in favor of Bogan is denied on Plaintiff's claim for tortious interference with prospective business relationships.

### 2.    SBI

Plaintiff has failed to raise a genuine dispute of material fact on its claim against SBI for tortious interference with prospective business relationships, specifically, that SBI acted with a conscious desire to prevent McGowan from entering into a specific business relationship and that the conduct of SBI was independently tortious or otherwise unlawful.  Unlike Bogan, whom Plaintiff accuses of diverting the Insurisk and Centex Quotes from McGowan, Plaintiff has not alleged any acts that SBI

---

[8]Plaintiff included in its Amended Complaint a cause of action for attorneys' fees pursuant to § 38.001 of the Texas Civil Practices and Remedies Code.  *See* M&O, at 40 & n.46.

[9]In seeking leave of the Court to amend its complaint on October 30, 2012, Plaintiff stated that "[a]lthough McGowan believes that Ohio law applied due to Judge Gwin's transfer of the case pursuant to 28 U.S.C. § 1404, counsel for Defendants have expressed their belief that Texas law should govern."  Plaintiff's Unopposed Motion for Leave to File First Amended Complaint *Instanter* [Doc. # 52], at 2.

[10]Even if the Court were to find that Bogan timely asserted his justification defense, summary judgment for Bogan would not be appropriate based on this defense.  There are fact issues regarding whether Bogan had a good faith belief that diverting the Insurisk Quote would not harm McGowan.  In any event, Bogan will be allowed at trial to explain the reasons for his conduct.

committed that gives rise to liability for tortious interference with prospective business relationships.   Neither Plaintiff's Amended Complaint nor Amended Statement contains allegations of any specific acts by or on behalf of SBI.[11]  Plaintiff does not identify a specific act by any person acting on behalf of SBI.  SBI is entitled to summary judgment on Plaintiff's claim of tortious interference with prospective business relationships.

### 3.      Baldwin and UMI

The Court concludes that Plaintiff has not met its burden to raise a genuine dispute of material fact that Baldwin or UMI's conduct was independently tortious or unlawful, and thus Plaintiff's claim for tortious interference with prospective business relationships will be dismissed.   In giving Plaintiff an opportunity to clarify its tortious interference claims, the Court specifically ordered that "Plaintiff must support each theory it intends to pursue with citations to evidence already in the record and legal authorities."   M&O, at 48.  Plaintiff has failed to meaningfully do so for its claims against Baldwin and UMI for tortious interference with prospective business relationships.

Plaintiff identifies very few acts that Baldwin and UMI allegedly committed.

---

[11]The Amended Statement merely states conclusorily that SBI "acted with a conscious desire to prevent McGowan's business relationship with respect to these pieces of business with Insurisk of Louisiana and Centex."  Amended Statement, ¶ 172.  Plaintiff also asserts that "Bogan informed Swain [SBI] of the Centex piece of business that Bogan had forwarded for the benefit of Baldwin, Universal, and/or Swain [SBI]."  *Id.*, ¶ 169.  Plaintiff further states that "Baldwin (President of Swain [SBI]) directed Sam Baldwin (President of Universal [UMI]) to reach out to Bogan to get a meeting set up with a prospective client."  *Id.*, ¶ 170.  None of these is an act committed by SBI, and Plaintiff has not argued any agency or other legal theory for holding SBI liable for acts committed by Bogan or Baldwin.  *Cf.* M&O, at 48.  As explained hereafter, *see infra* pages 18-19, Plaintiff thus has waived any right to pursue agency theories in this case.

Plaintiff states that Baldwin "instruct[ed] Bogan on how to get the [Insurisk Quote] formalized so that it can be run through Universal," Amended Statement, ¶ 125, and that UMI "bound" the Insurisk Quote, *id.*, ¶¶ 146, 149.[12]  Even if the Court were to assume *arguendo* that Baldwin and UMI committed these alleged acts with a conscious desire to interfere with McGowan's prospective business relationships, Plaintiff has not presented a cognizable theory that Baldwin's or UMI's acts constitute an actionable tort or an otherwise unlawful act against these Defendants, as required by the third element of a Texas claim for tortious interference with prospective business relationships.  That there is a fact issue related to Bogan's conduct does not state an actionable misappropriation claim against Baldwin or UMI.

Plaintiff contends that Bogan held "himself out with authority to act on behalf of Universal, Swain, and/or Baldwin," *id.*, ¶ 125, and that Baldwin and UMI "knowingly and voluntarily permitted Bogan" to divert the Insurisk and Centex Quotes away from McGowan, *id.*, ¶¶ 134, 155, 174.  These allegations are insufficient to state an agency theory of liability regarding SBI, Baldwin, or UMI.  Further,

---

[12]Plaintiff also states that Baldwin and UMI were "informed" about the Insurisk and Centex Quotes. *Id.*, ¶¶ 131, 150.  Being informed about a quote is not an act committed by Baldwin or UMI.  Plaintiff also states that Baldwin "directed Sam Baldwin, President of [UMI], to reach out to Bogan to get a meeting set up with a prospective client." *Id.*, ¶ 132. This vague reference in addition to the Centex and Insurisk Quotes appears to be regarding potential business but is not sufficient to be part of Plaintiff's claim for tortious interference with prospective business relationships.  Finally, Plaintiff's Response includes two sections entitled "Ray Baldwin's Tortious Activities" and "UMI's Tortious Conduct."  Response, at 2-7.  Plaintiff does not include a specific section about SBI.  These sections appear in the facts section of Plaintiff's brief and are not tied to any particular tort claims.  Most of Plaintiff's allegations in these sections relate either to events surrounding Bogan's hiring or to Baldwin's and UMI's alleged knowledge of Bogan's misconduct during Bogan's final month of employment with McGowan.  Plaintiff does not make meaningful arguments in these sections about any act or conduct Baldwin or UMI allegedly committed in connection with their alleged tortious interference with the Centex or Insurisk Quotes.

Plaintiff proffers no meaningful evidence to support such a theory.[13]  Any putative agency theory is now waived.  *See* M&O, at 52.

As Plaintiff has not offered any legal theory or authority for why UMI, SBI, and Baldwin's alleged knowledge of Bogan's employment with McGowan form a basis for their liability for tortious interference with prospective business relationships, or why acts by Bogan should be attributed to Baldwin or UMI, Plaintiff fails to state a claim for tortious interference with prospective business relationships. SBI, Baldwin, and UMI are entitled to summary judgment on this claim.

### C.    **Damages for Plaintiff's Breach of Contract Claim Against Bogan**

Bogan seeks summary judgment on Plaintiff's claim for breach of contract on the ground that Plaintiff has failed to raise a genuine dispute of material fact regarding damages caused by Bogan's alleged breach.[14]  Plaintiff's Amended Statement clarifies that Plaintiff seeks three categories of damages for this claim: "1) lost profits; 2)

---

[13]In Texas, "[a]gency is a consensual relation between two parties 'by which one party acts on behalf of the other, subject to the other's control.'"  *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App.–Dallas 2014, no pet.) (quoting *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782-83 (Tex. App.–Houston [1st Dist.] 2011, no pet.)).  "A principal is liable for the acts of another acting as its agent only when the agent has actual or apparent authority to do those acts or when the principal ratifies those acts."  *Reliant Energy Servs., Inc.*, 336 S.W.3d at 783 (citing *Spring Garden 79U, Inc. v. Stewart Title, Co.*, 874 S.W.2d 945, 948 (Tex. App.–Houston [1st Dist.] 1994, no pet.)).  "'An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority).'"  *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) (quoting *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007)).  "The law does not presume agency, and the party asserting agency has the burden to prove it."  *Reliant Energy Servs., Inc.*, 336 S.W.3d at 783 (citing *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007)).

[14]The Court previously held that Ohio law applies to this claim and that there are genuine fact disputes precluding summary judgment for either party on the issue of breach. M&O, at 9-15, 31-36.

through [sic] the payment of Bogan's salary and benefits during the time period that he was improperly conducting business on behalf of his new employer instead of devoting 100% of his business time to McGowan; and 3) the costs and expenses (including attorney's fees) related to the investigation of Bogan's conduct, which McGowan was forced to incur as a result of Bogan's breach."  Amended Statement, ¶ 40; Response, at 18.

For the reasons explained below, the Court denies summary judgment in favor of Bogan on Plaintiff's breach of contract claim.  The Court concludes that there is a genuine and material fact dispute as to whether Plaintiff suffered some damage as a result of Bogan's alleged breach of the Agreement.

## 1.    Lost Profits

Under Ohio law, "[t]he nonbreaching party [to a contract] is entitled to a recovery of lost profits as consequential damages if he is able to prove: '(1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty.'"  *Kosier v. DeRosa*, 862 N.E.2d 159, 165 (Ohio Ct. App. 2006) (quoting *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 466 N.E.2d 883, 887 (Ohio 1984)); *accord Kehoe Component Sales. Inc. v. Best Lighting Products, Inc.*, 933 F. Supp. 2d 974 1007, n.33 (S.D. Ohio 2013).  For the third element, "both the existence and the amount of lost profits must be demonstrated with 'reasonable certainty.'"  *AGF, Inc. v. Great Lakes Heat Treating, Co.*, 555 N.E.2d 634, 640 (Ohio 1990); *accord City of Gahanna v. Eastgate Props., Inc.*, 521 N.E.2d 814, 818 (Ohio 1988).  "[D]amages are not awarded merely on a plaintiff's assertion 'that it would have made a particular amount of profits, but [the plaintiff] must prove lost profits with calculations based

on facts.'" *Ask Chems., LP v. Computer Packages, Inc.*, 593 F. App'x 506, 511 (6th Cir. 2014) (second alteration in original) (quoting *UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.*, 770 N.E.2d 1068, 1084 (Ohio Ct. App. 2001)); *accord Gahanna*, 521 N.E.2d at 818; *Endersby v. Schneppe*, 596 N.E.2d 1081, 1084 (Ohio Ct. App. 1991). "[D]emonstrating lost profits to a reasonable certainty requires the use of detailed evidence, for example, 'expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.'" *Ask Chems., LP*, 593 F. App'x at 511 (quoting *AGF, Inc.*, 555 N.E.2d at 640); *see also Endersby*, 596 N.E.2d at 1083 ("Unless the figure is substantiated by calculations based on facts available or in evidence, the courts will properly reject it as speculative and uncertain." (citations and quotation marks omitted)).

As evidence of lost profits suffered by McGowan, Plaintiff submits with its Response a declaration of Longo dated April 20, 2015, an unauthenticated "McGowan Production Report," and an unauthenticated UMI "Production Analysis" purporting to show UMI's total production volume from January 1, 2011 to September 30, 2013.[15]

Plaintiff McGowan contends that it suffered lost profits as a result of emails that Bogan sent in July 2011 in breach of Paragraphs 5, 6, 7, and 36 of the Agreement. More specifically, Plaintiff argues that Bogan breached the Agreement by using Plaintiff's confidential information to send these emails to improperly solicit Plaintiff's clients and made disparaging comments about Plaintiff through various

---

[15]*See* Exhibit D to Response ("Longo Decl. dated Apr. 20, 2015") [Doc. # 131-1], at ECF pages 4-11; Exhibit D to More Definite Statement ("McGowan Production Report") [Doc. # 126]; Exhibit G to More Definite Statement ("UMI Production Analysis") [Doc. # 127]. Defendants have not objected to the admissibility of these documents, and the Court considers them for summary judgment purposes without prejudice to timely authenticity or foundation objections if warranted at the time of the Joint Pretrial Order.

statements including the following: "[I]t's not clear right now if McGowan will close the Dallas office or keep a downsized skeleton crew"[16]; "I've told [McGowan] that the unique relationship I've had with wholesalers like yourselves might just evaporate upon my leaving"[17]; and "if you choose to NOT follow the guy who was there for you thru [sic] think and think [sic], work [sic] for you day and night, and bend [sic] over backwards for you then, ok."[18]   Assuming for present purposes that these emailed statements violated Bogan's contractual obligations,[19] there is a genuine fact issue whether Bogan's statements caused any of Plaintiff's customer-recipients to cease doing business with Plaintiff.  In particular, Plaintiff calculates it suffered $27,729.70 in lost profits as contract damages due to the emails sent by Bogan.[20]

---

[16]Exhibit F to Plaintiff's Motion for Partial Summary Judgment [Doc. # 111-6], at ECF page 5.

[17]Exhibit T to Sealed Appendix XI [Doc. # 112-1], at ECF page 4.

[18]*Id.*

[19]The Court has already held that there are genuine disputes of material fact regarding each of Plaintiff's theories of breach.  M&O, at 31-36.

[20]According to Longo, McGowan "typically obtains 10% net commission of total production volume on business written through its brokers," and "McGowan's 10% net commission is the difference between what McGowan collects in commission and fees minus what McGowan pays its sub producers."   Longo Decl. dated Apr. 20, 2015, ¶ 25. McGowan's Production Report lists five brokers who allegedly received Bogan's email and subsequently decreased the amount of business they did with McGowan.  Three of these five brokers also appear on UMI's Production Analysis.  Longo testifies that McGowan lost a total of $23,920.00 in net commissions to UMI, which he calculates as (1) 10% of the $142,600 in total production volume UMI wrote for Insurisk of Louisiana from January 2011 to September 2013, or what Longo describes as "$14,260.00 in net commission [McGowan would have obtained] during the period of time that Bogan was employed by Defendants"; plus (2) 10% of the $80,420.00 in total production volume UMI allegedly wrote for Litchfield Special Risks from January 2011 to September 2013, or what Longo describes as

(continued...)

Defendants argue that Plaintiff cannot prove these lost profits resulted from Bogan's breach of the Agreement because nothing in UMI's Production Analysis Report shows that "UMI's business was derived either, in whole or in part, from alleged improper conduct by Bogan or anyone else." Reply, at 19-20.[21]  Defendants' argument misses the mark.  Plaintiff's entitlement to recovery of lost profits damages does not hinge on UMI gaining business from Plaintiff as a result of Bogan's alleged misconduct.  The issue here is whether McGowan suffered reasonably certain loss of profits from customers ceasing doing business with McGowan as a result of Bogan's July 2011 emails in breach of the Agreement.  The Court accordingly concludes that Plaintiff has satisfied its summary judgment burden on the damages element of its breach of contract claim that Plaintiff suffered some lost profits due to Bogan's alleged breach of the Agreement by sending emails to McGowan's clients containing disparaging comments about McGowan or improperly soliciting clients.[22]

---

[20](...continued)

"$8,042.00 in net commission [McGowan would have obtained] during the period of time that Bogan was employed by Defendants"; plus (3) 10% of the $10,900.00 of total production value that UMI allegedly wrote for Midlands Management of Texas from January 2011 to September 2013, or what Longo described "$1,090.00 in net commission [McGowan would have obtained] during the period of time in which Bogan was employed by Defendants." *Id.*, ¶¶ 27-31.  Longo adds to this total an additional $3,809.70 in net commissions, from two brokers, MarketScout Wholesale and Southwest Risk, who stopped doing business with McGowan after Bogan left.  Longo calculates this figure as 10% of $28,985.00, the total production volume McGowan received from Southwest Risk the year prior to Bogan's departure, plus 10% of 9,112.00, the total production value McGowan received from MarketScout Wholesale the year prior to Bogan's departure. *Id.*, ¶¶ 32-37.

[21]The Court agrees that Plaintiff has not established any business UMI wrote from January 1, 2011, through September 30, 2013, was obtained as a result of Bogan's emails allegedly sent in breach of the Agreement in June, July, and/or August 2011.

[22]This analysis applies similarly to Defendants' assertion that Plaintiff cannot seek lost
(continued...)

### 2.    Salary and Benefits Paid to Bogan

Additionally, Plaintiff contends it suffered damages from Bogan's breach of the Agreement in the form of salary and benefits paid to Bogan during the time he was employed by McGowan but allegedly conducting business for UMI and/or SBI. Plaintiff ties this damages theory to Bogan's alleged breach of Paragraph 36 of the Agreement for failure to devote 100% of his time to McGowan.  Response, at 18. Plaintiff has previously asserted that McGowan paid Bogan $2,767.54 in salary and benefits for a 16-day period from July 19, 2011 to August 5, 2011.[23]  Defendants argue that Plaintiff cannot seek salary and benefits against Bogan because salary and benefits are not "lost profits."  Motion, at 19-20.  This argument is rejected. Plaintiff's claim to recover Bogan's salary and benefits is a different damages theory from lost profits.

Defendants further argue that Plaintiff's salary and benefits damages theory is "nothing more than an improperly pled claim for restitution."  *Id.*, at 20, n.6. Defendants do not cite any case law in support of this argument or further explain why this damages theory is improperly pleaded or sought.  Summary judgment in favor of Bogan for lack of proof of damages on Plaintiff's breach of contract claim is denied without prejudice to additional analysis on the precise theory on which Plaintiff relies.

---

[22](...continued)
profits for two of Plaintiff's customers, *i.e.*, Southwest Risk and MarketScout Wholesale, that allegedly stopped doing business with McGowan after Bogan left and also do not appear on the UMI Production Analysis.  Reply, at 20.

[23]Plaintiff McGowan & Company Inc.'s Opposition to Defendants' Motion for Summary Judgment [Doc. # 119], at 32.  Plaintiff has also previously argued that Bogan conducted activities for his new employer's on McGowan's time, in breach of Paragraph 36 of the Agreement, from June 20, 2011 to July 29, 2011.  Reply in Support of Plaintiff McGowan & Company, Inc.'s Motion for Partial Summary Judgment Against Defendant Roger F. Bogan and Summary Judgment on Defendants' Counterclaim [Doc. # 121], at 7-9.

### 3.    Investigation Costs and Attorneys' Fees

Plaintiff's third damages theory is recovery of investigation costs and attorneys' fees on its breach of contract claim.   Disposition of any attorneys' fees and investigation costs issue is premature.  The Court has held that Paragraph 27 of the Agreement is enforceable under Ohio law.  *See* M&O, at 23-25.  However, Plaintiff first must recover on its breach of contract claim and prove entitlement to some damage other than attorneys' fees resulting from Bogan's breach.  Summary judgment here is unwarranted.

### D.    <u>Damages for Plaintiff's Breach of Fiduciary Duty Claim Against Bogan</u>

Bogan also argues that he is entitled to judgment as a matter of law on Plaintiff's breach of fiduciary claim because Plaintiff has failed to raise a genuine and material fact dispute whether it suffered any damages as a result of Bogan's alleged violation of any fiduciary duty.[24]  Plaintiff clarifies in its Amended Statement that it seeks damages on this claim in the form of (1) "lost profits"; (2) "the amount of compensation that Bogan improperly retained during his final weeks of McGowan employment while he was performing work on behalf of his new employer, instead of McGowan"; (3) "profit disgorgement" from UMI or SBI; and (4) "exemplary damages in the form of punitive damages as a result of the willful and wanton acts of Bogan."  Amended Statement, ¶¶ 51, 53, 54.

Plaintiff points to the same evidence and the parties raise the same fact-based arguments regarding Plaintiff's claim for lost profits on the breach of fiduciary duty and breach of contract claims.  While Texas law applies to this tort claim, and Ohio

---

[24]Texas law applies to this tort claim, *see* M&O, at 16-18, and there are genuine fact disputes on the elements of duty, breach, and causation precluding summary judgment for either party, *see id.*, at 42-45.

law applies to Plaintiff's breach of contract claim, the same genuine, material fact disputes apply to both claims regarding whether Bogan's misconduct resulted in $27,729.70 of recoverable lost profits for McGowan. *See supra* Part III.C.1 (breach of contract lost profits damages); *see also supra* Part III.B.1(a) (lost profits under Texas law for Plaintiff's tortious interference with prospective business relationships claim against Bogan). Similarly, under both Ohio and Texas law, genuine fact disputes exist about Plaintiff's ability to recover the salary and benefits that Plaintiff allegedly paid Bogan during his final month of employment. *See supra* Part III.C.2 (breach of contract salary and benefits damages). Finally, the genuine fact disputes explained above with regard to whether Plaintiff may recover exemplary damages under Texas law, *see supra* Part III.B.1(a), apply to this claim as with Plaintiff's claim for tortious interference with prospective business relationships. The Court concludes, accordingly, that Plaintiff has raised a genuine dispute of material fact regarding whether it suffered some damage as a result of Bogan's misconduct. Bogan is denied summary judgment on Plaintiff's breach of fiduciary duty claim.

Defendants, on the other hand, are awarded summary judgment on Plaintiff's third damages theory, profit disgorgement. Plaintiff's claim is asserted only against Bogan, but Plaintiff seeks disgorgement from UMI or SBI of "ill-gotten profits improperly retained as a result of Bogan's usurping of McGowan's corporate opportunities and/or competition with McGowan while Bogan was still employed with McGowan." Amended Statement, ¶ 53; *see also* Amended Complaint, ¶ 50 ("Bogan further breached these [fiduciary] duties by usurping McGowan's corporate opportunities for his own benefit and for the benefit of Swain & Baldwin and Baldwin."). The Texas Supreme Court has recognized profit disgorgement may be an equitable remedy for a breach of fiduciary duty, *ERI Consulting*, 318 S.W.3d at

873, and that a third party may be liable for the breach of a fiduciary duty when that fiduciary acts the agent of that third party, *id.*, or where a third party "knowingly participates in the breach of duty of a fiduciary," *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 574 (Tex. 1942).  Because Plaintiff has not alleged or raised a genuine fact issue that Bogan acted as the agent of UMI or SBI, or that UMI or SBI knowingly participated in Bogan's breach of his fiduciary duties, the Court concludes that Defendants UMI and SBI are entitled to summary judgment on Plaintiff's damages theory of profit disgorgement on the breach of fiduciary claim asserted only against Bogan.

## IV.  CONCLUSION AND ORDER

For the reasons explained above, the Court awards judgment as a matter of law in favor of all Defendants on Plaintiff's claim for tortious interference with business relationships and in favor of Baldwin, UMI, and SBI on Plaintiff's claim for tortious interference with prospective business relationships.  Plaintiff's damages theories are limited to the extent explained herein.  Based on the foregoing and the Court's Memorandum and Order dated March 27, 2015, the remaining claims that Plaintiff may pursue are solely against Defendant Bogan and are breach of contract, breach of fiduciary duty, and tortious interference with prospective business relationships.

It is accordingly

**ORDERED** that Defendants' Second Motion for Summary Judgment [Doc. # 128] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Count IV of the Amended Complaint, Plaintiff's claim for tortious interference with business relationships against Defendants Bogan, SBI, Baldwin, and UMI, is **DISMISSED with prejudice**.  It is further

**ORDERED** that Count V of the Amended Complaint, Plaintiff's claim for

tortious interference with prospective business relationships against Defendants SBI, Baldwin, and UMI is **DISMISSED with prejudice**.  It is further

**ORDERED** summary judgment is **GRANTED** in Defendants' favor on Plaintiff's damages theory for its breach of fiduciary claim asserted against Bogan seeking profit disgorgement from UMI and SBI.

There being no remaining claims in this case against Defendants SBI, Baldwin, or UMI, it is hereby **ORDERED** that these Defendants are **DISMISSED with prejudice** from this case.  It is further

**ORDERED** that summary judgment as to Defendant Bogan is **DENIED** on Plaintiff's claims for breach of contract, breach of fiduciary duty, and tortious interference with prospective business relationships.  It is further

**ORDERED** that, in light of Plaintiff's clarification regarding the amount of damages sought and the dismissal of three of the four Defendants named in this action, Plaintiff and Bogan, the sole remaining parties, **MUST MEDIATE** their disputes and the deadline to do so is **extended** from June 15, 2015, *see* Order Granting Joint Motion for Extension of Mediation Deadline [Doc. # 147], to **July 6, 2015.**  It is further

**ORDERED** that **Docket Call** for trial on Plaintiff's remaining claims against Bogan is continued to **July 7, 2015 at 2:00 p.m.**  The **Joint Pretrial Order** is due **June 29, 2015**.  Trial is set for **July 8, 2015 at 9:30 a.m.** It is further

**ORDERED** that Defendants' objections to Plaintiff's More Definite Statements are **SUSTAINED** to the extent explained herein.  Subject to these objections, Plaintiff's Motion for Leave [Doc. # 130] is **GRANTED**.  Plaintiff is not required to re-file its Amended Statement [Doc. # 130-1].  Finally, it is

**ORDERED** that Plaintiff's Motion to Strike [Doc. # 142] is **GRANTED**.

Defendants' Supplemental Answer [Doc. # 129] is **STRICKEN** from the record.  It is further

  **ORDERED** that Defendants' requests for leave of the Court to amend their answer to add a "justification defense," *see* Defendants' Response to Motion to Strike and Defendants' Reply, are **DENIED**.

  SIGNED at Houston, Texas, this 27th day of **May, 2015**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE
